FILED '11 APR 01 14:03 USDC-ORE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| RICKY LEE BARRETT, | 09-1515-TC |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner Social Security Administration, | |
| Defendant. | |

COFFIN, Magistrate Judge:

Plaintiff Ricky Lee Barrett seeks review of the Social Security Commissioner's final decision denying his application for disability benefits under Title II of the Social Security Act. For the following reasons, I recommend that this court reverse and remand the Commissioner's decision for further proceedings consistent with the findings below.

**Background**

Born in 1957, Barrett attended school until the tenth grade and received a GED. He has worked as a flagger, construction worker, ride operator and security guard. He filed an application

Page 1 - FINDINGS AND RECOMMENDATION

for benefits on September 26, 2006 alleging disability beginning January 1, 2002 based on hepatitis, diabetes and vascular disease. Barrett was forty-four years old on the alleged onset date of disability. He was fifty-one years old on the date of the ALJ's decision.

Barrett's application was denied initially and upon reconsideration. On March 24, 2009, an Administrative Law Judge held a hearing in Eugene, Oregon. Barrett was assisted at hearing by a non-attorney representative. Barrett testified at the hearing, as did his wife and independent vocational expert (VE) Mark McGowan. His mother submitted written information instead of testimony. The ALJ subsequently issued a written decision finding Barrett not disabled because he could perform his past relevant work as a security guard and other occupations, and thus was not disabled. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. Barrett seeks review of this finding.

## Disability Analysis

The Commissioner engages in a sequential process of between one and five steps in determining whether an individual is disabled under the Act. Bowen v. Yukert, 482 U.S. 137, 140 (1987). Anderson challenges the ALJ's evaluation of the evidence and her conclusions at steps two through five.

Step one requires the ALJ to determine if the claimant is performing any gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has a "severe medically determinable physical and mental impairment" that meets the twelve month duration requirement. Id. at § 404.1520(a)(4)(ii). If the claimant does not have such an impairment, he is not disabled. At step three, the ALJ determines whether the severe impairment (or a combination of impairments) meets or equals a "listed" impairment in the regulations. Id. at

Page 2 - FINDINGS AND RECOMMENDATION

404.1520(a)(4)(iii). If the ALJ determines the impairment (or combination of impairments) equals a listed impairment, then the claimant is disabled. If the adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular basis, despite the limitations imposed by his impairments. Id. 404.1520(a)(4)(e). The ALJ uses this information to determine if the claimant can perform past relevant work at step four. Id. 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. Id. 404.1520(a)(4)(v); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

The claimant bears the initial burden of establishing disability. Tackett, 180 F.3d at 1098. If the analysis reaches the fifth step, the burden shifts to the Commissioner to show jobs within claimant's RFC exist in the national economy. Id. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g).

## The ALJ's Findings

At step two, the ALJ found that Barrett's diabetes and hepatitis C were severe, and caused more than minimal limitations. At step three, however, the ALJ found that Barrett's impairments–either alone or in combination, did not equal or meet a listed impairment. The ALJ found that Barrett had the RFC to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). At step four, the ALJ determined that Barrett could perform his "past work as a security guard as generally performed." (Tr. 15).

## Standard

This court's review is limited to whether the Commissioner's decision to deny benefits to

plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported by substantial evidence on the record as a whole. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## Discussion

Barrett argues that the ALJ's credibility findings are not supported by substantial evidence and, moreover, the ALJ erred in discounting his testimony when it was supported by the record. Barrett further claims the ALJ improperly rejected third party testimony. He disputes the RFC finding and contends that the ALJ's vocational hypothetical did not include all of Barrett's restrictions.

### I. Credibility

#### A. Credibility and the RFC Assessment

I first note that the ALJ's analysis revered the manner in which he must consider credibility.

The ALJ must consider a claimant's credibility in the course of assessing a residual functional capacity. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p at *7 (available at 1996 WL 374184). Here, the ALJ found that Barrett's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 13). No authority suggests that an ALJ may reason that a claimant is not credible based upon the RFC assessment. The ALJ's finding that Barrett's testimony is not credible to the extent that it diverges from the RFC finding disregards the role of the credibility analysis in determining an RFC. Thus, this finding should not be sustained.

B. **Credibility and Barrett's Treatment Records**

The ALJ's credibility analysis cited Barrett's medical record, which the ALJ discussed in depth. (Tr. 13-15). The ALJ found that the treatment record did not support Barrett's claims of persistent and intense symptoms. For instance, the ALJ noted that after a 2005 cardiac stress test, the examining physician Dr. Kremser opined that Barrett could continue to play basketball with his son. (Tr. 14). The ALJ stated that if Barrett's "reported limitations were accepted as claimed, such that he was so limited in sitting, standing, or walking and was essentially bedridden, one would expect to find weakness, loss of strength, and muscle atrophy, which is not present in this case." (Tr. 15).

Once a claimant establishes an impairment that could reasonably be expected to produce his alleged symptoms and there is no evidence of malingering, the ALJ may not require that the medical evidence corroborate the degree of symptom testimony the claimant proffers. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing Smolen, 80 F.3d at 1273). The ALJ must make credibility findings "sufficiently specific to permit the reviewing court to conclude that the ALJ did

Page 5 - FINDINGS AND RECOMMENDATION

not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record and observations of third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F.3d at 1284. Finally, an ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id.

As noted, the ALJ found a conflict between Barrett's reported symptoms and treatment records showing what the ALJ characterized as Barrett's reports to medical providers of minimal to no symptoms. (Tr. 13). This finding is not supported by the medical records. For example, the ALJ found that a 2004 treating record indicated that Barrett's nausea and vomiting was found to be viral. The ALJ failed to consider however, multiple treatment notes from late 2007 through 2009 which reflect chronic nausea. (Tr. 397, 389, 355, 555 and 532). Treatments notes also reflect that Barrett had ongoing issues with pain–for example, a December 2008 note reported leg pain, cramping and burning in his feet, most likely related to diabetes. (Tr. 535). A treatment note from almost a year later in November 2009, noted Barrett was "currently experiencing back pain," had "chronic pain" in his abdomen and hands, chronic nausea, complaints of stiffness, pain and coldness in his hands, and pain to his legs. (Id. at 532-533). It stated that Neurotin was ordered for Barrett's ongoing leg pain, but it was denied by his insurance. (Tr. 533).

The ALJ found that Barrett's activities were inconsistent with his symptom testimony, noting that Barrett initially reported he played basketball about one hour a week, went fishing about two hours per week, was able to sit through a two hour movie, and had been cleared after a cardiac stress test to continue playing basketball with his twenty-four year old son. Daily activities inconsistent

Page 6 - FINDINGS AND RECOMMENDATION

with alleged disability may support a negative credibility finding, but sporadic completion of daily living activities are not equivalent to full time employment. Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant "need not vegetate in a dark room" to be found disabled. Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (internal quotation marks omitted).

I find that the medical record does not undermine Barrett's testimony that he suffered chronic nausea and other chronic pain. This evidence includes the above described reports of nausea and pain to his treating physician Dr. Engstrom, his treating PA and his assorted clinical examiners. (Tr. 397, 389, 355, 555, 532, 238). The ALJ may not discredit Barrett simply because the objective medical evidence does not match the symptom testimony he alleges. Smolen, 80 F.3d at 1282. The objective medical evidence need only support the claimant's testimony. It does not have to fully establish or prove it.

The Commissioner also asserts that Barrett's symptom testimony is unsupported by the medical record because, although he alleged difficulty standing, sitting, and walking, examining cardiologist Dr. Kremeser reassured Barrett that he could continue playing basketball. The record indicates that Barrett saw Dr. Kremeser for chest pain complaints. (Tr. 237). The Commissioner argues that there is "no indication that Dr. Kremser limited her opinion to his chest complaints when advising him he could continue to play basketball." (dkt. #17 at 7). In this era of specialized healthcare, it is unlikely that a treating cardiologist would identify or address any complaints regarding standing, sitting, and walking. Further, there is no evidence in the record to indicate that Barrett asked Dr. Kremeser to treat him for a condition outside her speciality. Instead, the record indicates that Dr. Kremeser evaluated Barrett for atypical chest pain. (Tr. 237).

For these reasons, I find that the ALJ erroneously concluded that Barrett's treatment record

Page 7 - FINDINGS AND RECOMMENDATION

and daily activities undermined his symptom testimony. This finding should therefore not be sustained.

### C. **Credibility and Conservative Treatment**

The ALJ found that Barrett's use of ibuprofen for pain and cannabis for nausea conflicted with his pain symptom testimony. Use of over-the-counter pain medication is an example of conservative treatment that is sufficient to discount a claimant's testimony regarding the severity of an impairment. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007). The record here, however, establishes that Barrett had hepatitis and was concerned that use of stronger pain medications would make his liver disease worse. (Tr. 34). Further, the record indicates that Barrett was unable to tolerate Lyrica, which was prescribed for his neuropathic pain, and that his insurance company denied his request to cover Neurotin. (Tr. 253, 533). Based on the record, I find that the ALJ did not make a sufficiently clear and convincing finding that Barrett used over-the-counter medications because his pain was not severe.

### D. **Lay Witness Testimony**

The ALJ found that the information provided by Barrett's motion Leona Barrett was not credible because it "echoes that reported by claimant" and "appears to be based on the claimant's reports to her, considering that she noted that she sees the claimant approximately four times a year." (Tr. 13). In determining the RFC, the ALJ considered that Barrett's wife Sarah Barrett testified that he experienced nausea "before and during interferon treatment, but not since" and that he performs limited household tasks and cares for a grandson, but is no longer able to play basketball. (Id.)

I first note that, as the Commissioner admits, the ALJ misstated Sarah Barrett's testimony. Instead of testifying that Barrett's nausea stopped after his interferon treatment, she actually testified

Page 8 - FINDINGS AND RECOMMENDATION

that his nausea continued before, during, and after the interferon treatment. (Tr. 42; dkt. #17 at 12). The Commissioner argues that, despite this misstatement, the ALJ's RFC finding that Barrett could perform the full range of light work is consistent with Sarah Barrett's testimony. I do not find the Commissioner's argument persuasive. The ALJ's finding that Barrett's nausea stopped after his treatment was central to the ALJ's determination that Barrett's testimony about his symptoms was not fully credible. Additionally, I find that the ALJ erred in crediting Sarah Barrett's testimony that Barrett could perform household tasks but disregarding her additional testimony that Barrett had difficulty handling objects and had recently dropped a plate. (Tr. 43). A limited ability to handle objects is a work related function and would have bearing on an RFC finding.

Next, I find that the ALJ erred in rejecting Leona Barrett's testimony. The ALJ can reject lay testimony only by giving specific reasons germane to each witness. Smolen, 80 F.3d at 1298. As noted, the ALJ found that Leona Barrett's testimony was based on Barrett's reports to her and described substantially similar symptoms. To the extent that the ALJ rejected the lay witness statements of Barrett's mother based on his conclusion that Barrett was not entirely credible, such a rejection is insufficient. Lay witnesses are competent to make independent observations of a claimant's pain and other symptoms. Dodrill v. Shalala, 12 F.3d 915, 918-19 (1993) ("[t]hat the ALJ dismissed all the lay witness testimony solely because he found the claimant was not credible suggests he may have been under the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms."); see also Sprague, 812 F.2d at 1232 ("[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence."). Furthermore, an ALJ cannot reject lay witness testimony simply by rejecting the credibility of a claimant. Schow

Page 9 - FINDINGS AND RECOMMENDATION

v. Astrue, 272 Fed.Appx. 647, 653 (9th Cir.2008) (ALJ failed to provide reasons for rejecting the lay witnesses' observations that were " 'germane to each witness' " by relying heavily on the adverse credibility finding as to the claimant's testimony) (citation omitted). Eyewitnesses can often tell whether someone is suffering or "merely malingering." Dodrill, 12 F.3d at 919. Although this is particularly true of someone who sees a claimant every day, the testimony of those who see the claimant less often still carries some weight. Id. I find that the ALJ failed to give reasons germane to Leona Barrett for rejecting her testimony.

For these reasons, I find that the ALJ did not properly consider the lay witness testimony. This finding therefore should not be sustained.

## II.   Step Four and Step Five Findings

As I have found that the ALJ erred in his RFC analysis and in his credibility findings, I find that the step four finding, which was based on the aforementioned errors, cannot be sustained.

### Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000). The issue turns on the utility of further proceedings. Id. at 1178. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

Here the ALJ erred in his consideration of Barrett's testimony and lay witness testimony. The ALJ reversed the manner in which he should have considered Barrett's credibility by considering it as compared to the RFC instead of in the course of assessing the RFC and improperly discounted symptom testimony not corroborated by medical records. He also misstated lay witness

Page 10 - FINDINGS AND RECOMMENDATION

testimony, failed to consider testimony regarding limitations with housework, and rejected lay witness testimony based on his adverse credibility finding as to Barrett's testimony.

Further proceedings are necessary for the ALJ to properly consider Barrett's symptom testimony and the lay witness testimony. On remand the ALJ shall take care to consider Barrett's credibility in the course of assessing his RFC and not as compared to the RFC.

## Conclusion

As described above, I find that the ALJ's decision denying benefits is not supported by substantial evidence. I recommend that this matter be remanded for further proceedings consistent with this opinion.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 1 day of April 2011.

THOMAS M. COFFIN
United States Magistrate Judge